IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GAIL LEVY,** <br><br> *Plaintiff,* <br><br><br> v. <br><br><br> **HFACTOR, INC., JASON BOYD, ADAM LINDER, DAWN CAMES, CHI HUA LEE, & HEFF TURNER.** <br> *Defendants.* | **CIVIL ACTION** <br> **NO. 24-4160** |
| **HFACTOR, INC.,** <br> *Counter Claimant,* <br><br><br> v. <br><br> **GAIL LEVY,** <br><br> *Counter Defendant.* | |

Baylson, J.                                                                                         July 13, 2026

### MEMORANDUM RE: MOTION TO DISMISS (ECF 111-1)

### I.       Introduction

Defendants Adam Linder, Dawn Cames, and Chi Hua Lee (collectively, "Moving Defendants") have filed a Motion to Dismiss the Third Amended Complaint for lack of personal jurisdiction and failure to state a claim.  ECF 111-1.  Moving Defendants' Motion to Dismiss as to Count I ("PWPCL") will be **DENIED** as to Defendants Lee and Cames, but **GRANTED** as to Defendant Linder.  Moving Defendants' Motion to Dismiss Count III (Tortious Interference) will be **DENIED** as to Defendant Linder, but **GRANTED** as to Defendants Lee and Cames.  Motion to Dismiss Count IV (Breach of Fiduciary Duty) and Count V (Aiding and Abetting Breach of

1

Fiduciary Duty) will be **GRANTED** as to all Moving Defendants. Motion to Dismiss Count VI (Conspiracy) will be **DENIED** as to all Moving Defendants.

The Court will analyze personal jurisdiction and sufficiency of the pleadings for each count separately. For the reasons stated below, the Court's conclusions will be specific to each count and individual.

## II.    BACKGROUND

This case involves HFactor, Inc.'s ("HFactor") alleged failure to pay Gail Levy ("Plaintiff" or "Levy"), approximately $185,000 in wages and benefits, and alleged misconduct by former officers of HFactor. Third Am. Compl. ("TAC"), ECF 107. The TAC names HFactor, Adam Linder, Dawn Cames, Chi Hua Lee, and Jeff Turner (collectively, "Defendants") as defendants. TAC ¶¶ 14–19. Linder, Cames, and Lee (collectively, "Moving Defendants") have filed a Motion to Dismiss ("Motion," ECF 111) the claims against them based on various grounds. Levy brings five claims relevant to the instant Motion to Dismiss inquiry. Plaintiff alleges violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL") against all defendants (Count I), Tortious Interference against Linder, Lee, Cames, and Turner (Count III), Breach of Fiduciary Duty against Turner and Cames (Count IV), Aiding and Abetting Breach of Fiduciary Duty against Linder, Lee, and Turner (Count V), and Conspiracy against all defendants (Count VI). TAC ¶¶ 96–125.

Plaintiff alleges as follows. Plaintiff is the founder of HFactor, Inc., which sells hydrogen-infused water. TAC ¶ 1. In 2022, non-party Jason Boyd sought to invest in a substantial ownership stake of HFactor. TAC ¶ 2. At some point following this initial inquiry, Plaintiff sold Boyd a portion of the company, reducing her ownership stake in exchange for the promise that she would retain an executive-level position. TAC ¶ 3–5. Plaintiff and HFactor executed an employment

2

agreement, hiring Plaintiff as president of the company and allowing her to remain a minority shareholder. TAC ¶ 4. Boyd installed Defendant Dawn Cames as the controlling shareholder and Chair of the Board of Directors. TAC ¶ 3. Defendant Adam Linder never held a position as an employee or board member of HFactor, but connected Boyd and Cames and advocated for her appointment as interim Chief Financial Officer. TAC ¶¶ 7–9. Boyd unofficially brought Linder in "to oversee HFactor's management," effectively taking "control of all high-level decision making[.]" TAC ¶ 6.

Boyd and Linder appointed "another friend" as Chief Operating Officer by selecting Defendant Chi Hua Lee. TAC ¶ 8. Lee clashed with Plaintiff and attempted to seize control of many day-to-day operations from Plaintiff. TAC ¶ 10. Plaintiff was not paid her salary and did not receive benefits for at least one year. TAC ¶ 13. When she sought payment, HFactor's controller, Crystal Bai, told Plaintiff that Linder had ordered HFactor and Lee to withhold further payment of her salary. TAC ¶ 12. Linder, Turner, Lee, and Cames agreed to create a shadow company to which they moved HFactor's assets rather than pay Plaintiff. TAC ¶ 87. Linder formed "Standard Beverage Incorporated" in Nevada on October 29, 2024, and acts as president while Lee is also involved in the management in some capacity. TAC ¶ 88–89. Turner assisted HFactor in transferring its intellectual property to Standard Beverage while Cames was an executive. TAC ¶ 90. Through 2025, Lee exercised some degree of control over HFactor's bank accounts and sent himself more than $150,000 through wire and "Zelle" transfers, knowing the company owed wages to Plaintiff and sanctions to the Court. TAC ¶ 92. Cames, in her capacity as Director and Controlling Shareholder, signed a board resolution in March of 2025 with Lee approving of two of these transfers totaling $40,000. TAC ¶ 93.

3

Plaintiff has added two new allegations to the TAC:[1] (1) that Linder formed the "Standard Beverage Incorporated," to which Defendants conspired to transfer HFactor's intellectual property and assets, TAC ¶ 88–94, and (2) that Lee controlled a Pennsylvania bank account.  TAC ¶ 30.

III.   **LEGAL STANDARD**

a.   **Rule 12(b)(2)**

A federal court sitting in Pennsylvania has jurisdiction over the parties to the extent provided under Pennsylvania state law.  Miller Yacht Sales, Inc. v. Smith, 384 F. 3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)).  Pennsylvania law permits a court to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States," and that exercise of personal jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa.C.S. § 5322(b); see Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F. 3d 124, 129 (3d Cir. 2020); Miranda v. C.H. Robinson Co., No. 18-553, 2019 WL 6038539, at *3 (E.D. Pa. Nov. 13, 2019) (Baylson, J.).

When a defendant files a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff must establish the Court's jurisdiction over the moving defendant through "affidavits or other competent evidence."  Metcalfe v. Renaissance Marine, Inc., 566 F.

---

[1] The Court acknowledges that its Opinion regarding the prior Motion to Dismiss differs from this one.  However, recent discovery proceedings have illuminated Moving Defendants' additional contacts with Pennsylvania: Defendant Lee's usage of a Pennsylvania bank account and siphoning of assets, Defendant Linder's creation of a new corporation to evade obligations in Pennsylvania, and Defendant Lee and Cames's continued business obligations with Plaintiff in Pennsylvania.  These contacts and pleadings relate to the wage claim, tortious interference, and conspiracy claims, and crystallized and altered the totality of the circumstances.  The issue of personal jurisdiction remains a close question, as it was in the prior Opinion, which was formed based on allegations that depicted less connection to Pennsylvania and a conspiracy pleading that appeared to the Court like a "bathtub conspiracy," where the Court had difficulty ascertaining whether the parties were truly acting as separate entities or instead whether the conspiratorial conduct reflected HFactor acting through its agents.  See e.g., Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 769 (1984).  In light of the newly developed allegations of facts reflecting a scheme outside the scope of HFactor inner dealings, and pleadings demonstrating agreement, collaboration, and awareness of Defendants' actions impacting Pennsylvania, the Court concludes that the exercise of personal jurisdiction over all Defendants under the conspiracy theory is now appropriate.

4

3d 324, 330 (3d Cir. 2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F. 3d 1287, 1302 (3d Cir. 1996)).  When the Court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Miller Yacht Sales, Inc. v. Smith, 384 F. 3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings Ltd., 292 F. 3d 361, 368 (3d Cir. 2002) and Carteret Sav. Bank, FA v. Shushan, 954 F. 2d 141, 142 n.1 (3d Cir. 1992)).

Unlike a Rule 12(b)(6) motion, a 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside of the pleadings," and thus, often requires assessment of affidavits or other similar evidence submitted by the parties.  Patterson by Patterson v. F.B.I., 893 F. 2d 595, 603 (3d Cir. 1990).  When the defendant puts forward affidavits or other evidence in support of a 12(b)(2) motion, the plaintiff must meet its burden that personal jurisdiction lies through pleadings or other evidence.  Id.

### b.  Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements,"  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," id. at 678 (citation omitted).  Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume

5

that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563

n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## IV.     Parties' Contentions

Moving Defendants assert that the TAC fails to establish personal jurisdiction over them because Plaintiff has not alleged any relevant contacts with Moving Defendants and this forum. Mot. at 7. Defendants argue that Plaintiff's reliance on her residence and remote work from Pennsylvania is misguided because the same argument has been rejected by courts in this District. Id. at 9. Defendants further argue that to the extent they had contacts with Pennsylvania through their involvement with HFactor, those contacts cannot be ascribed to them in their personal capacity because of the corporate shield doctrine. Id. at 13.

Plaintiff responds by pointing to certain cases where courts have found personal jurisdiction over individual corporate defendants based on defendants' contacts with an employee working from the forum. See Opp'n, ECF 122 at 19. Plaintiff argues the Court should not recognize the corporate shield doctrine because Pennsylvania has an interest in providing solutions for injured residents and that Moving Defendant's associations with HFactor establish personal jurisdiction over them because of their involvement in HFactor's extensive business dealings in Pennsylvania. Id. at 17–19.

Moving Defendants go on to assert that Plaintiff has failed to state a claim under the PWPCL because the Moving Defendants are not "employers" within the meaning of the statute and Plaintiff's allegations are otherwise too conclusory to state a claim. Mot. at 17–18. Defendants further argue that the remaining claims are barred by the gist of the action doctrine because the tort claims arise from the alleged breach of Levy's employment contract. Id. at 21. Plaintiff responds that the term "employer" is construed broadly under the PWPCL and

includes the Moving Defendants.  Opp'n at 25.  Further, Plaintiff argues that gist of the action

doctrine does not bar her tort claims because the Moving Defendants were not parties to the

contract at issue.  Id. at 29.

**V.**    **Discussion**

**a.  Count I: Pennsylvania Wage and Payment Collection Law ("PWPCL")**

**i.  Personal Jurisdiction**

Defendants Cames, Lee, and Linder have moved to dismiss all counts against them for lack

of personal jurisdiction.  To exercise personal jurisdiction over a defendant, the defendant must

"have certain minimum contacts with [the forum] such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326

U.S. 310, 316 (1945) (citation omitted).  "Personal jurisdiction over a defendant may be either

general or specific."  Chavez v. Dole Food Co., Inc., 836 F. 3d 205, 223 (3d Cir. 2016) (en

banc).  Neither party asserts that general jurisdiction exists over the Moving Defendants, so the

Court will focus on specific jurisdiction.  Opp'n at 17.

Specific jurisdiction requires three elements.  First, the "defendant must have

'purposefully directed [its] activities'" toward Pennsylvania.  O'Connor v. Sandy Lane Hotel Co.,

496 F. 3d 312, 317 (3d Cir. 2007) (alteration in original) (quoting Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 472 (1985)).  Second, the claims "must 'arise out of or relate to'" the

defendants' activities in Pennsylvania.  O'Connor, 496 F. 3d at 217 (quoting Helicopteros

Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984)).  Finally, a finding of personal

jurisdiction must not "offend traditional notions of fair play or substantial justice."  O'Connor,

496 F. 3d at 316 (quoting Int'l Shoe Co., 326 U.S. at 316).  However, when the first two prongs

of the test are met, a defendant must make a "compelling case that the presence of some other

consideration would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.  A finding

of specific jurisdiction is "claim specific because a conclusion that the District Court has personal

jurisdiction over one of the defendants as to a particular claim … does not necessarily mean that

it has personal jurisdiction over that same defendant as to [Plaintiff's] other claims." Remick v.

Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citation omitted).

In assessing whether a defendant directed his or her activities toward Pennsylvania, the

Court "must assess whether [the defendant's] 'suit-related conduct' creates 'a substantial

connection' with Pennsylvania to establish the necessary minimum contacts." Hardwick v.

Consumer Guardian Specialists, LLC, No. 2:20-CV-00060, 2021 WL 1152739, at *4 (W.D. Pa.

Mar. 26, 2021) (Hornack, J.) (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)).  "The

minimum contacts inquiry looks to the defendant's contacts with the forum State itself, not the

defendant's contacts with persons who reside there." Id. (quotation omitted).  "[T]he plaintiff

cannot be the only link between the defendant and the forum [as] it is the defendant's conduct

that must form the necessary connection with the forum State that is the basis for its jurisdiction

over [the defendant]." Walden, 571 U.S. at 285–86 (citing Burger King, 471 U.S. at 478).  The

"defendant's relationship with a plaintiff ... is an insufficient basis for jurisdiction[.]" Id. at 286.

(citing Rush v. Savchuck, 444 U.S. 320, 332 (1980)).

Plaintiff alleges Defendants Linder, Cames, and Lee violated the PWPCL by withholding

her wages.  Defendants argue that these activities did not happen in Pennsylvania and, even if they

did, Defendants engaged in these activities in their capacity as corporate agents.  Typically, under

the corporate shield doctrine, "corporate agents are not subject to personal jurisdiction based solely

on acts performed in the forum state in their corporate capacity." Rototherm Corp. v. Penn Linen

& Unif. Serv., Inc., No. CIV. A. 96-6544, 1997 WL 419627, at *8 (E.D. Pa. July 3, 1997) (citations

omitted). "This general rule, however, does not apply when the corporate officer is charged with (1) committing a tort in his corporate capacity or (2) violating a statutory scheme that provides for personal, as well as corporate, liability for corporate actions." United Prod. Corp. v. Admiral Too & Mfg. Co., 122 F. Supp. 2d 560, 562 (E.D.Pa. 2000) (citation omitted). "Likewise, a court may disregard the fiduciary shield if the defendant 'had a major role in the corporate structure, the quality of his contacts with the state were significant, and his participation in the tortious conduct was extensive.'" Id. (quoting TJS Brokerage & Co.v. Mahoney, 940 F. Supp. 784, 789 (E.D.Pa. 1996)).

When evaluating whether to consider a defendant's corporate contacts, courts look to the totality of the circumstances, including (1) "the defendant's role in the corporate structure," (2) "the quality of the defendant's forum contacts," and (3) "the nature and extent of the defendant's participation in the alleged violations." Pritchett v. Alternative Bearings Corp., No. 1:19-CV-01493, 2020 WL 2847865 (M.D. Pa. June 2, 2020).

Plaintiff's claims support an exception to the corporate shield doctrine because they are either tort claims or claims arising out of the PWPCL, which is a statutory scheme that provides for personal liability. See 43 P.S. §§ 260.2a-260.3; see also, Johnson v. Phelps, No. 05-CV-5555, 2007 WL 1030086, at *4 (E.D. Pa. Mar. 30, 2007) (Surrick, J.).

Under the PWPCL, an employer is "any agent or officer… employing any person in this Commonwealth." 43 Pa. Stat. Ann. §260.2a. In considering the totality of the circumstances, the court is persuaded that Lee and Cames both serve in high corporate positions, with Lee serving as COO (see ECF 6-1), and Cames serving at various times as Chairman of the Board, CEO, and CFO. See ECF 122-3 (Opp'n Exh. B), Levy Aff. at ¶¶ 25–26. Further, Lee exercised control over HFactor's bank accounts and during the relevant periods had full discretion to manage HFactor's

operations.  See ECF 122-8 (Opp'n Exh. G) at ¶ 2.  Cames signed "contractual agreements for HFactor Inc., as its Director, acting Chief Financial Officer, and Chair of HFactor Inc.'s Board of Directors."  Levy Aff. at ¶¶ 25–26.  For example, Cames approved an agreement to siphon HFactor's assets out of the bank accounts, and into the Standard Beverage Incorporated.  TAC ¶ 118. These are significant and leading roles in the corporate structure. In their high-ranking positions, both Lee and Cames had contacts with the forum.

Second, Plaintiff alleges that both Cames and Lee engaged in contacts with Pennsylvania. Cames managed significant revenue in Pennsylvania and, as the sole officer at one point, directed business activities to Pennsylvania, including selling HFactor Water with various physical retailers and shipping HFactor Water to Pennsylvania citizens.  Levy Aff. at ¶¶ 16, 25–26.  Cames controlled HFactor's assets, directed payments, and managed business operations in Pennsylvania, but declined to use the financial gain to pay Plaintiff's wages.  These are deliberate acts that created "continuing obligations" between Cames and residents of the forum.  Burger King, 471 U.S. at 475–76.  Cames also communicated with Plaintiff about regularly checking the Pennsylvania P.O. Box for mail, which furthered an employer and employee dynamic between Cames and Levy related to Cames's obligation, as the sole member of HFactor's Board of Directors and as the CFO, to pay Levy wages in exchange for her work.  Cames engaged in communications with Plaintiff, aware that Plaintiff resided and worked in Pennsylvania; therefore, Defendant Cames aimed and caused the most harm in Pennsylvania. See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) (finding that defendant engaged in phone communications directed to an individual in Pennsylvania, which counted as contacts, and were "deliberate and personally directed significant activities toward the state"); see also Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (finding that scheduling payments created continued

obligation to the state, which showed that defendants reached into the state, and thus purposely directed their activities toward Pennsylvania); Waimberg v. Med. Transp. of Am., Inc., 52 F. Supp. 2d 511, 515 (E.D. Pa. 1999) (finding that mail and phone calls can be a contact that establishes personal jurisdiction when defendant's obligations to the plaintiff were furthered and created by the communications).

For Defendant Lee, the record reflects one instance of physical presence in Pennsylvania, communications through mail and phone calls with the Plaintiff, and control of bank accounts tied to Pennsylvania. Lee's trip to King of Prussia supports a finding of substantial connection with Pennsylvania because Lee, as Chief Operating Officer who owed wages to Plaintiff and was responsible for directing wages and mail, visited Pennsylvania for the purpose of interacting with a Pennsylvania resident. See Mellon Bank (E.) PSFS, Nat., 960 F.2d 1223 (finding personal jurisdiction where defendants travelled to Pennsylvania, entered a partnership with Pennsylvania-entity, and sent mail to Pennsylvania); see also Beistle Co. v. Party U.S.A., Inc., 914 F. Supp. 92, 96 (M.D. Pa. 1996) (finding that Pennsylvania had personal jurisdiction over a corporate officer who travelled and communicated with residents of the state and plaintiff's claim arose out of the connection established by the communications). Defendant Lee visited Pennsylvania, removed Plaintiff from a bank account that was used to pay employees, knowingly met with an employee that was owed wages, and instructed Plaintiff to use a Pennsylvania mailbox for the company's business purposes; Lee benefitted from the forum's laws by sustaining a business relationship.

Because Cames and Lee acted to benefit themselves by doing business in Pennsylvania and directing Plaintiff to do business on the company's behalf in Pennsylvania, these actions taken while in their corporate capacities can be attributed to them as individuals. See Kyko Glob., Inc. v. Prithvi Info. Sols. Ltd., No. 2:18-CV-01290-WSS, 2020 WL 1159439, *29 (W.D. Pa. Mar. 10,

2020) (finding that defendants' corporate contacts could be used as evidence for personal jurisdiction because defendants received benefits from their contacts with the forum).

Based on the above, the third factor is also met because Cames and Lee, due to their control over HFactor bank accounts and over Levy's employment in Pennsylvania, directly participated in the alleged withholding of wages. See Johnson v. Phelps, No. 05-CV-5555, 2007 WL 1030086, at *4 (E.D. Pa. Mar. 30, 2007) (finding that defendant was significantly involved with the allegedly wrongful conduct because he orchestrated and gave out orders to carry out the act). Given that Cames and Lee had the two top roles in HFactor's corporate structures, significant contacts with Pennsylvania, and were the main participants in withholding Plaintiff's wages, the Court finds that the totality of the circumstances support considering their corporate conduct when considering personal jurisdiction. And for the same reasons, Cames and Lee have purposefully directed activities towards Pennsylvania and Plaintiff's PWPCL claim relates to Cames and Lee's activities in Pennsylvania.

The final step in evaluating personal jurisdiction is to determine whether a finding of personal jurisdiction would not offend tradition notions of fair play and substantial justice. Int'l Shoe Co., 326 U.S. at 316. Courts evaluate the "burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies" to assess traditional notions of fair play and substantial justice. Burger King Corp., 471 U.S. 477. Here, Pennsylvania has a high interest in adjudicating the dispute because one of its residents has been injured. See Elbeco Inc., 989 F. Supp. At 678 (finding that "when a Pennsylvania resident is injured in the Commonwealth, Pennsylvania has a strong interest in

12

providing a forum for their resident and in having the responsible defendants accountable for their actions in Pennsylvania"). Defendants have purposefully availed themselves to benefitting from Pennsylvania's laws through using the Pennsylvania bank account and mailing system. Defendants have benefitted from the forum and caused injury to Plaintiff in the forum. Plaintiffs 'cause of action has arose out of Defendants 'contacts with Pennsylvania. This substantial connection meets the fair play and substantive justice standard. See Grand Entertainment Group, Ltd., 988 F.2d at 484 (finding that defendants made an affirmative decision to be in contact with Pennsylvania, and thus being subject to personal jurisdiction in Pennsylvania would not "deprive them of their right to fair play and substantial justice").

Accordingly, the Court has the power to hear claims against Lee and Cames pursuant to specific personal jurisdiction.

### ii. Sufficiency of the Third Amended Complaint (Rule (12)(b)(6))

As to the Rule 12(b)(6) argument, Plaintiff sufficiently alleged elements of PWPCL. To state a claim under PWPCL, "an employee 'must aver a contractual entitlement to compensation from wages and a failure to pay that compensation.'" Carlson v. Qualtek Wireless, LLC, No. 22-2569, 2023 WL 5094566, at *4 (3d Cir. Aug. 9, 2023) (quoting Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011)). Plaintiff has alleged that she was contractually entitled to compensation as the President of HFactor. TAC ¶¶ 34 – 35. Plaintiff alleges that she was owed $185,000 in unpaid wages and health insurance benefits. TAC ¶ 70. Finally, Plaintiff alleges that HFactor and the individual Defendants refused to pay her unpaid wages. TAC ¶ 40. Accordingly, because the Court has personal jurisdiction and Plaintiff has sufficiently alleged a claim under the PWPCL, the Motion to Dismiss Count I as to Cames and Lee is **DENIED**.

13

Linder, on the other hand, was hired as a high-level strategic advisor to guide the other Defendants in decisions.  Levy Aff. at ¶ 6.  Linder did not have an official appointment as an executive in HFactor.   Despite allegations that he was influencing executives, he himself was not an executive, and instead was a contractor who did not have explicit, ultimate authority to make wage decisions as an employer.  Therefore, the Court is not inclined to consider his conduct within his capacity as a contractor for HFactor due to the corporate shield doctrine.  Further, even if the Court were to find it had personal jurisdiction over Linder with regard to PWPCL claim, the claim would fail on 12(b)(6) grounds because Linder is not an employer within the meaning of the statutory definition.  See Pritchett, No. 1:19-CV-01493, 2020 WL 2847865 at *5 (finding that an employer can be one of the officers who makes corporate decisions, such as hiring employees).  Therefore, even to the extent Linder's shielded corporate contacts touched Pennsylvania and are relevant to the claims, he is not liable under the statutory definition of employer.  As such, the Motion to Dismiss Count I as to Linder will be **GRANTED**.

### b.  Count III: Tortious Interference

#### i.  Personal Jurisdiction

Plaintiff alleges that Defendant Linder engaged in tortious interference when he "ordered HFactor to withhold further payment of her salary," knowing that it would inflict injury on Plaintiff in Pennsylvania.[2]  Pennsylvania can exert personal jurisdiction if the defendant engaged in tort actions that "they knew would have a potentially devastating impact upon respondent" and

---

[2] Plaintiff also alleges tortious interference against Cames and Lee.  However, Cames and Lee are corporate agents of one of the contract's parties and thus cannot be a third party interfering with the contract.  See Feury v. Provco Grp., Ltd., 2010 WL 2527678, at*2 (E.D. Pa. June 17, 2010) (quoting Reis v. Barley, Snyder, Senft & Cohen LLC, 667 F. Supp. 2d 471 (E.D. Pa. 2009), aff'd, 426 F. App'x 79 (3d Cir. 2011)) (finding that an agent of a corporate entity is not considered a different party to the corporation's contracts because corporations can only act through its employees, and therefore agents of a business organization cannot commit tortious interference).

where "they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works." Calder v. Jones, 465 U.S. 783, 789 (1984).

Calder created an "effects test" to establish personal jurisdiction over non-residents for intentional torts committed outside the forum. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998). To satisfy this test, the plaintiff must allege facts sufficient to meet a three-prong test: (1) defendant must have committed an intentional tort; (2) plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and (3) the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. Id.

The first prong is met because Plaintiff has alleged that Defendant Linder has committed tortious interference, an intentional tort. Linder's interference with Plaintiff's wages affected Plaintiff in Pennsylvania because Plaintiff was under contract to act as the company President and work remotely from Pennsylvania. See Remick, 238 F.3d at 259 (finding that the bulk of the damage occurred in Pennsylvania because the defendant's tort affected plaintiff's professional activities in the state); see also Keeton v. Hustler Mag., Inc., 465 U.S. 770, 780 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (finding that a tort can inflict the bulk of its impact on a plaintiff in their home state). Without the salary to support her livelihood, the withholding of wages earned in Pennsylvania inhibits her from being compensated for her activity. See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1076 (10th Cir. 2008) (finding that a focal point is where the tort would inhibit that state's resident from receiving a profit from her business activity). Therefore, the second prong is satisfied because Plaintiff felt the brunt of the harm in Pennsylvania. Finally, the third prong is met because Linder knew that Plaintiff lived and

15

worked in this forum, and like in Calder, knew that the brunt of the damage would occur in Plaintiff's residence state.  Cf. Kabbaj v. Simpson, 547 F. App'x 84, 88 (3d Cir. 2013) (finding that no personal jurisdiction existed because the defendant did not "knowingly interact... with residents of" the state).  Defendant Linder had significant influence on the corporation as the "shadow CEO," controlling employee payments having all employees, presumably including Plaintiff, report to him on "day-to-day operations."  Opp'n at 6.  See Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc., 885 F. Supp. 2d 767, 783 (E.D. Pa. 2012) (finding that an individual officer was subject to personal jurisdiction for being a "key player in Titan's corporate structure and personally involved in the alleged tort").  Linder had intimate knowledge of Levy's work situation and was involved with the negotiations that resulted in Levy transitioning from CEO to President of HFactor, which included her working remotely from her home in Pennsylvania.  TAC ¶¶ 3–6.  Linder would have known that any interference with her wages would affect her as a remote worker who conducted HFactor business in Pennsylvania.  Calder, 465 U.S. at 789.  Therefore, Linder's instruction to Cames and Lee to carry out this denial of wages was a deliberate interference with obligations owed to Plaintiff in Pennsylvania.

In sum, according to the allegations, Linder knowingly gained economic advantage from directing the withholding of Plaintiff's payments because he ordered the non-payment and HFactor's assets to be siphoned into Standard Beverage Incorporated, Linder's new company, instead.  Therefore, even without direct presence in this forum, this Court has personal jurisdiction over Linder as to Count III.

### ii. Sufficiency of the Third Amended Complaint

Alternatively, Linder argues the claim should be dismissed under Rule 12(b)(6) for insufficiently pleading the elements of tortious interference.   To state a tortious interference

16

claim, a plaintiff must plead "(1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct." Store Rd., LLC v. N. Paone Constr.. Inc., 272 A.3d 448, **3 (Pa. Super. Ct. 2022). Here, Plaintiff alleged that there was a contractual relationship between her and HFactor. TAC ¶ 4. Plaintiff alleged that Defendant Linder interfered with her contract by directing executives to withhold Plaintiff's salary and corporate benefits, depriving her of more than $180,000 in wages and benefits. TAC ¶ 70. Plaintiff also alleges an absence of privilege or justification for these acts because Defendant Linder was the "shadow" CEO, and not a formally appointed executive with authority to make wage decisions, and his alleged purpose was to improperly funnel money from the company into his own company. Therefore, Plaintiff has sufficiently alleged tortious interference.

Accordingly, the Motion to Dismiss will be **DENIED** as to Linder under Count III.

c. **Count IV & Count V: Breach of Fiduciary Duty & Aiding and Abetting Breach of Fiduciary Duty**

Under Count IV, Plaintiff claims that Defendant Cames has breached a fiduciary duty to Plaintiff by freezing Levy out from decision-making at HFactor and causing her to lose wages and equity value. TAC ¶¶ 111–120.[3] Plaintiff further alleges as Count V that Defendants Lee and Linder aided and abetted this breach of fiduciary duty. TAC ¶¶ 111a–20a. Under Georgia law, breach of fiduciary duty claims are to "be brought as a derivative suit when the injury is to

---

[3] The Complaint duplicates paragraphs 111–120, where the allegations under Count IV and Count V contain identically numerated paragraphs with different content. As such, the Court will refer to paragraphs under Count V as paragraphs 111a–120a.

17

the corporation and its shareholders.  Southland Propane, Inc. v. McWhorter, 312 Ga. App. 812,

720 S.E.2d 270, 275 (2011).  An exception to this is when there is "an injury which is separate

and distinct from that suffered by other shareholders, or a wrong involving a contractual right *of*

*a shareholder* which exists independently of any right of the corporation."  Phoenix Airline

Servs. v. Metro Airlines, 397 SE2d 699, 260 Ga. 584, 586 (1990) (emphasis added).  This is not

the case at hand because Plaintiff is claiming an injury of lost wages and less management on the

board.  These damages stem from her status as an employee, not as a shareholder, and thus

Plaintiff does not have standing to assert a breach of fiduciary duty claim on this basis.  Id.

Further, because Plaintiff "failed to establish a cause of action for an underlying tort, the aiding

and abetting claim must also fail."  Liberty Mut. Grp., Inc. v. 700 Pharmacy, LLC, 2022 PA

Super 19, 270 A.3d 537, 555 (2022).

Thus, the Motion to Dismiss is **GRANTED** as to Counts IV and V and these counts will

be **DISMISSED** without leave to amend because Plaintiff has failed to cure these deficiencies

after multiple rounds of amendment.

### d.  Count VI: Conspiracy

#### i.  Sufficiency of the Third Amended Complaint

Defendants Cames, Lee, and Linder have moved to dismiss Plaintiff's conspiracy claim

for lack of personal jurisdiction and failure to adequately plead.  Under Pennsylvania law,

conspiracy requires the plaintiff to allege that (1) at least two individuals act with the sole,

common purpose of committing an unlawful act, (2) an overt act in furtherance of this

agreement, and (3) some sort of actual legal damage to the plaintiff.  Zafarana v. Pfizer, Inc., 724

F. Supp. 2d 545, 559 (E.D. Pa. 2010).  Claims for civil conspiracy "must be based on an

independent underlying civil cause of action" and "the plaintiff must show it was the object of a

conspiracy." <u>NRA Grp., LLC v. Durenleau</u>, 154 F.4th 153, 172 (3d Cir. 2025), <u>cert. denied</u>, 146 S. Ct. 1856 (2026) (citation omitted).  Here, the unlawful civil act was the violation of the PWPCL.  The overt act taken in furtherance of this agreement was Linder instructing Lee and Cames to withhold Plaintiff's wages and to transfer HFactor's assets to another company.  This alleged conduct reflects that the conspiracy was committed with "an intent to injure … absent justification." <u>Thompson Coal Co. v. Pike Coal Co.</u>, 488 Pa. 198, 412 A.2d 466, 472 (1979). Further, Lee and Cames acted overtly by authorizing the transfer of funds out of the company and withholding her wages for months, despite an obligation to pay Plaintiff.  The conduct has resulted in legal damage to Plaintiff in the form of more than $185,000 in wages and benefits owed to her.  <u>See</u> <u>Aita v. NCB Mgmt. Servs., Inc.</u>, 2024 PA Super 223, 324 A.3d 611, 616 (2024), appeal granted in part, 337 A.3d 959 (Pa. 2025) (finding that PWPCL's purpose is to enforce a remedy for a damage: breach of contractual obligation to pay employee's wages). Thus, Plaintiff sufficiently alleges a conspiracy where Defendants Lee, Linder, and Cames intentionally used their officer positions and authority in the company to further this alleged conspiracy and cause her damage.  <u>Cf.</u> <u>Aetna Inc. v. Insys Therapeutics, Inc.</u>, 324 F. Supp. 3d 541, 553 (E.D. Pa. 2018) (finding that there was no conspiracy because the plaintiff did not allege that the defendants intentionally acted against the plaintiff).  Plaintiff sufficiently alleges the elements of conspiracy.  Accordingly, the Motion to Dismiss for Rule 12(b)(6) will be **DENIED**.

### ii.  Personal Jurisdiction

Next, the Court turns to the issue of personal jurisdiction as to the Conspiracy count. Personal jurisdiction exists over Defendant Lee and Cames for the same reasons it exists over

them under the PWPCL claim.  See supra §V(a)(i).  Plaintiff argues that the Court can exert jurisdiction over Linder pursuant to coconspirator jurisdiction.

Under co-conspirator jurisdiction, "the court imputes the contacts of the 'resident' co-conspirator over whom it has jurisdiction to the 'foreign' co-conspirator to see if there are sufficient contacts to exercise jurisdiction over the latter."  Doe v. Hesketh, 15 F. Supp. 3d 586, 595 (E.D. Pa. 2014).  For the Court to have coconspirator jurisdiction over Defendant Linder, Plaintiff must "plead with particularity that 1) the defendant was a participant in an actionable conspiracy, 2) substantial acts in furtherance of the conspiracy occurred in [the forum], and 3) the non-forum co-conspirator was aware or should have been aware of those acts."  Aetna Inc. v. Insys Therapeutics, Inc., 324 F. Supp. 3d 541, 551 (E.D. Pa. 2018); see also Sugartown Worldwide LLC v. Shanks, Civ. No. 14-5063, 2015 WL 1312572, at *4 (E.D. Pa. Mar. 24, 2015) ("It is not enough that the non-forum co-conspirator is part of the conspiracy as plaintiff must plead the defendant's involvement with specificity.")

For substantial acts in furtherance of the conspiracy, Lee went to Pennsylvania to exert control over finances and bank accounts, and both Lee and Cames directed Plaintiff in Pennsylvania in her capacity as an employee, furthering their obligation to pay her wages while actively withholding wages.  Finally, Cames and Lee exerted control over Pennsylvania bank accounts, allowing them to transfer HFactor assets out of the company, pursuant to the conspiracy.

The second prong is met because Linder knew of these overt acts, since he directed Defendant Lee to engage with the Pennsylvania resident and funnel assets out of the company to avoid paying Levy.  See CDI Int'l, Inc. v. Marck, No. CIV.A. 04-4837, 2005 WL 146890, *3 (E.D. Pa. Jan. 21, 2005) (finding that no physical contacts with Pennsylvania was still sufficient

for exercising personal jurisdiction because defendant directed a Pennsylvania corporation to act fraudulently in Pennsylvania and "was part of a conspiracy whose actors committed acts in Pennsylvania and caused harm in Pennsylvania").  There is further evidence that Linder knew of these substantial acts because the transferring of assets out of HFactor to the newly started Standard Beverage Incorporated significantly benefitted him, likely at the expense of Plaintiff's outstanding wages.  See Kyko Glob., Inc., No. 2:18-CV-01290-WSS, 2020 WL 1159439, *33 (finding that plaintiff satisfied the knowledge prong for the defendant co-conspirators by showing that they had received the benefit of fraudulent actions).

Accordingly, the Court finds that Plaintiff has adequately alleged that Defendants conspired to violate the PWPCL by averring that the Moving Defendants performed substantive acts in furtherance of this conspiracy and were aware of their contributions.  Therefore, this Court has personal jurisdiction over Moving Defendants.

The Motion to Dismiss will be **DENIED** as to Count VI.

## VI.    Conclusion

For the foregoing reasons, Motion to Dismiss as to Count I (PWPCL) will be **DENIED** as to Defendants Lee and Cames, but **GRANTED** as to Defendant Linder.  Count III (Tortious Interference) will be **DENIED** as to Defendant Linder, but **GRANTED** as to Defendants Lee and Cames.  Count IV (Breach of Fiduciary Duty) and Count V (Aiding and Abetting Breach of Fiduciary Duty) will be **GRANTED** for all Moving Defendants.  Count VI (Conspiracy) will be **DENIED** as to all Moving Defendants.  An appropriate order will follow.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-4160 Levy v HFactor\24-4160 Memorandum re MTD [ECF 111].docx