IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GAIL LEVY,**<br>*Plaintiff,*<br>**v.**<br>**HFACTOR, INC., & JEFF TURNER.**<br>*Defendant.* | **CIVIL ACTION**<br>**NO. 24-4160** |

**MEMORANDUM RE: SECOND MOTION FOR SANCTIONS [ECF 81]**

**BAYLSON, J.** **July 30, 2026**

## I. INTRODUCTION

Plaintiff Gail Levy has filed a second Motion for Sanctions and a Request for Default Judgement against Defendant HFactor and Defendant Jeff Turner ("Defendants"). The Motion will be **GRANTED** as to Defendant HFactor. The Court will **GRANT** Default against HFactor, Inc. on Count I (PWPCL), Count II (breach of contract), and Count VI (conspiracy). The Court will reserve issuing a money judgment pursuant to the default until after the remainder of the case proceeds to trial or otherwise resolves. Plaintiff's Motion for Sanctions against Defendant Turner will be **GRANTED** in part, but the Request for Default will **DENIED** on all claims against Defendant Turner. The Court will also reserve issuing an order on the appropriate sanctions until after the case proceeds to trial or otherwise resolves.

## II. FACTS AND PROCEDURAL HISTORY

This case involves HFactor, Inc.'s ("HFactor") alleged failure to pay its former President Gail Levy ("Levy"), approximately $185,000 in wages and benefits. TAC ¶ 70, ECF 107. The Court has previously discussed the case in detail (see ECF 89, 129) and what follows is an abbreviated summary. Levy alleges she is the founder of HFactor, Inc., a company selling

hydrogen-infused water using a technology Levy invented. As the founder and Chief Executive Officer she entered into an agreement with an investor in 2022. Following this investment transaction, Levy stepped down from her role and executed an employment agreement to become President of HFactor and remain a minority shareholder. She alleges that the new executives who joined HFactor tried to push her out and HFactor did not pay her salary for over a year, all in a coordinated effort to funnel money out of HFactor and into a new corporation using the technology she patented.

On August 13, 2024, Levy filed this case against HFactor claiming breach of contract and unpaid wages. Compl., ECF 1. On November 15, 2024, Levy filed an Amended Complaint. ECF 15. On December 9, 2024, HFactor filed an Answer and a Counterclaim against Levy. ECF 16. On June 10, 2025, after the Court granted leave, Levy filed a Second Amended Complaint against HFactor, Jason Boyd, Adam Linder, Dawn Cames, Chi Hua Lee, and Jeff Turner. ECF 46. Again, HFactor filed counterclaims against Levy. ECF 57.

The Court dismissed claims against Boyd, Linder, Cames, and Lee for lack of personal jurisdiction, ECF 89, but after a hearing on the motion for sanctions, granted Levy leave to file a Third Amended Complaint due to Defendants' alleged coordinated avoidance of Court orders and discovery. ECF 104. On March 17, 2026, Levy filed a Third Amended Complaint against HFactor, Linder, Cames, Lee, and Turner. ECF 107. The Court dismissed claims of breach of fiduciary duty and aiding and abetting breach of fiduciary duty against Linder, Cames, and Lee for lack of standing. The Court also dismissed in part the Pennsylvania Wage and Payment

Collection Law ("PWPCL") claim and the tortious interference claim as to Linder only. ECF 111. The remaining claims include:

(1) a PWPCL claim against HFactor, Turner, Lee, and Cames,

(2) a breach of contract claim against HFactor,

(3) a tortious interference claim against Linder and Turner,

(4) a breach of fiduciary duty claim against Turner,

(5) an aiding an abetting breach of fiduciary duty claim against Turner, and

(6) a conspiracy claim against all defendants.

**A. Procedural History of Discovery Disputes**

On May 13, 2025, Levy filed a Motion to Compel Responses to Written Discovery, asking the Court to compel HFactor to respond to Levy's first set of Interrogatories and Requests for Production, which had been served in February 2025. ECF 37. The Court granted the motion and ordered HFactor to comply with the Court's order by May 28, 2025. ECF 38. On July 9, 2025, Levy filed a Motion for Sanctions against HFactor, due to its failure to turn over financial records sought in discovery. ECF 54. The Court found that under Fed. R. Civ. P. 37, HFactor failed to produce discoverable material after being compelled to do so, granting in part and denying in part Levy's first Motion for Sanctions. ECF 62. The Court awarded Levy $15,000 in attorney fees for time spent on discovery and related motions to be paid by August 27, 2025. ECF 78.

The Court found that HFactor "had failed to follow the Rules of Civil Procedure, the Local Rules of this court, and had been basically dilatory and non-responsive to the requirements of discovery[.]" Id. However, the Court also found that Plaintiff's counsel's hourly rate was excessive. Id. Nevertheless, the Court warned that "if Defendant continues the conduct that

warranted the Motion for Sanctions, then the Court may require Defendant to pay additional sums to be determined." Id.

After Defendants provided additional discovery, Levy filed her Second Motion for Sanctions on September 12, 2025, arguing that Defendants HFactor and Turner have not turned over key bank records despite having constructive access to those records and complaining that the $15,000 fee award has never been paid. ECF 81.

In a hearing on the Second Motion for Sanctions, the Court remarked that "the evidence is sufficient" to show at least that HFactor and Mr. Turner "should have been more responsive to discovery." Hr'g Tr. (ECF 115) 66:6–10. The Court also found that it was clear "HFactor is in default of its discovery obligations in this case." Id. at 66:20. However, the Court left the penalty to be determined at a later time. Id. The Court ordered both parties to produce proposed Findings of Fact and Conclusions of Law to be filed to supplement existing briefing on the Second Motion for Sanctions. Id. at 67:12–3. The Court additionally requested Defendant Turner to provide the contact information and addresses of Defendant Lee and Defendant Linder to Levy as part of his discovery obligations. Id. at 72–74. The Court also informed Levy that it would grant leave to amend the complaint in response to new information presented during the sanctions hearing. Id. at 73:5–8. Plaintiff and Defendant Turner each filed Proposed Findings of Fact ("PFF"). See Plaintiff's PFF ("Plf. PFF," ECF 121); see also, Defendant Turner's PFF ("Def. PFF," ECF 123).

### B. Summary of Findings of Fact

1. Plaintiff served discovery on HFactor on March 31, 2025. Def. PFF ¶ 1–2.

2. Defendant Turner was not a member of the executive suite and was not a party to the first complaint. Def. PFF ¶ 64.

3. Defendant Lee became COO of HFactor on August 1, 2023 and has continued in this role. Def. PPP ¶ 22; Hr'g Tr. 30:16–20.

4. In February 2025, Turner and Lee transferred all HFactor's intellectual property to Defendant Linder's new Nevada-based company, Standard Beverage. Plf. PFF ¶ 24.

5. Turner partly handled the SEC filings that involved the transfer of ownership to Linder. Hr'g Tr. 28:12–16.

6. Turner became Chairman of the Board, CEO, and sole controlling shareholder of HFactor in March 2025. Plf. PFF ¶ 8.

7. Since March of 2025, HFactor has not paid any of its bills, sold any products, or manufactured any products. Def. PPP ¶ 31–34.

8. Turner has not paid himself a salary for his role as CEO of HFactor since becoming owner. Def. PPP ¶ 35.

9. On March 10, 2025, Defendant Cames, as sole member of the Board of Directors, issued a Board Resolution setting Defendant Lee's compensation at $200,000 per year. Def. PPP ¶ 23.

10. Leading up to the first sanctions hearing on July 24, 2025, Defendant Lee received approximately $100,000 in wire transfers and "Zelle" payments from HFactor's accounts. Hr'g Tr. 14-15.

11. At the first sanctions hearing, the Court ordered HFactor and Defendant Turner to respond to all discovery, including the production of all financial records since the inception of HFactor, by August 7, 2025. Plf. PFF ¶ 3.

12. The Court also imposed $15,000 sanction on HFactor to be paid by August 27, 2025. Plf. PFF ¶ 6.

13. Turner and HFactor failed to comply with this Court's Orders to produce all of HFactor's financial records and pay Levy the $15,000 sanctions award in time. Plf. PFF ¶ 7.

14. On August 27, 2025, HFactor possessed more than $40,000 in its bank account. Plf. PFF ¶ 18. The majority of this money was then transferred to Defendant Lee in September 2025. Plf. PFF ¶ 20.

15. Standard Beverage began using HFactor's trademarks to market and sell HFactor-branded water as of December 17, 2025. Plf. PFF ¶ 20.

16. At no point during discovery did Turner did call Bank of America and ask for bank statements for HFactor or HFactor subsidiary accounts. Hr'g Tr. at 11:23-24.

17. Turner states that Lee holds access to the bank accounts and PayPal accounts for HFactor, Inc so he has no personal access to the bank accounts throughout his time as owner. Def. PFF ¶ 40.

18. Turner stated he was aware of multiple ERC tax credit deposits entering HFactor's accounts while he was CEO but he did not know when they entered. Hr'g Tr. at 44:15-17.

19. Following a third court order [ECF 99], Turner contacted Lee and retrieved records from HFactor's Bank of America account using Lee's credentials on March 11, 2026, two days before the second sanctions hearing on March 13, 2026. Plf. PFF ¶ 15.

20. On March 12, 2026, Turner wrote in an attestation to the court that HFactor no longer had funds available to pay the sanctions and did not possess any assets or intellectual property that could be sold to satisfy the sanctions. Plf. PFF ¶ 21-22.

## III. <u>ARGUMENTS FROM THE PARTIES</u>

Levy argues Defendants Turner and HFactor's avoidance of discovery and failure to satisfy the Court's orders has risen to the point that default judgment should be entered against HFactor and Turner. Levy seeks sanctions against Defendant Turner because, although he was not a named party subject to the order granting the first sanctions, he was the sole employee, owner, and corporate officer of HFactor when the suit was initiated and is therefore the only person responsible for HFactor's conduct. Defendant Turner argues that he should not be sanctioned because he has not violated any order in his individual capacity nor failed to produce documents in his individual capacity.

Levy asserts that Defendants HFactor and Turner have both refused to produce the entirety of its financial records, despite being compelled to do so and sanctioned for failing to comply in the past. Defendant Turner argues that he has continually attempted to produce the financial records but he did not have access to the requisite accounts and he was reliant on Defendant Lee's credentials to access the records most recently. Defendant Turner also argues that he is unable to pay the monetary sanction from the court on HFactor's behalf because he was

unaware of the monetary amounts in the account at each moment and now there is no money left in the accounts to pay the court's order.

## IV. DISCUSSION

### A. Whether Defendants' Conduct is Sanctionable

A court can "issue further just orders" sanctioning a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Defendants Turner and HFactor have been on notice since at least August of 2025 that they had a duty to provide all financial records of HFactor. As it stands, Defendants continue to shirk their discovery obligations and omit records such as records of their PayPal activity past 2024 and the most recent bank account statement for HFactor. Defendants have also failed to pay $15,000 in attorney fees for time spent on discovery and related motions. Defendants have not provided any satisfactory explanation for its disregard for the Court's orders.

Levy argues that Turner should be individually subject to sanctions because he is a sophisticated attorney and had control over HFactor's response to this lawsuit as the CEO and sole member of the Board. Defendant Turner has served as outside corporate counsel to HFactor since mid-2021 and his career was largely in corporate and transactional work. Hr'g Tr. at 6:10-20. See, e.g., Garr v. U.S. Healthcare, Inc., 22 F.3d 1274, 1280 (3d Cir. 1994) (affirming Rule 11 sanctions against attorneys who failed to personally investigate the facts and law underlying a securities fraud complaint, even where they had relied on the knowledge of another attorney whom they believed to be competent securities counsel).

Since March of 2025, when this suit was initiated, Defendant Turner has served as CEO of HFactor and sole member of the Board of Directors. "It is well established that when a corporate officer fails to act on behalf of the corporation to comply with a court order, the officer

too may be held in contempt." Secretary of Labor v. Altor Inc., 783 F. App'x 168, 174 (3d Cir. 2019) (collecting cases); see also Wilson v. United States, 221 U.S. 361, 377 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, appraised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.").

Defendant Turner has stated he is the only member of the company, making him similar to a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). When deposing a corporation using a 30(b)(6) witness, the "corporation's duty of preparation goes beyond the designee's personal knowledge and if necessary, the corporation must use documents, past employees, or other resources to provide responsive information to its designee." Arconic Inc. v. Novelis Inc., No. CV 17-1434, 2019 WL 6496721, *1 (W.D. Pa. Dec. 3, 2019) (citation omitted).

Based on the foregoing, Defendant Turner must face individual sanction for failure to produce discovery and respond to court orders because he has not provided good reason as to why he was unable to receive login credentials from Defendant Lee until March or why HFactor ignored its obligation to pay the $15,000 sanction before its bank accounts were allegedly emptied. Upon receiving login credentials, Turner could have and should have supplied other banking records. Turner's dilatory behavior and unexplained incompetence caused significant prejudice to Plaintiff and warrant sanction.

**B. Whether Default Judgement is Appropriate**

District courts in the Third Circuit weigh six factors to determine if default judgement is appropriate:

> (1) the extent of the party's personal responsibility;
>
> (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>
> (3) a history of dilatoriness;
>
> (4) whether the conduct of the party...was willful or in bad faith;
>
> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>
> (6) the meritoriousness of the claim or defense.

Poulis v. State Farm Fire & Casualty Company., 747 F.2d 863, 868 (3d Cir. 1984). Not all factors need to be satisfied to enter default judgement. Id. Levy seeks default judgement for all her claims against Defendants Turner and HFactor and their counter claims.

**a. Extent of Responsibility of both Defendants**

Both HFactor and Turner bear responsibility for the conduct that led to discovery delays and tardiness in the payment of sanctions. See Poulis, 747 F.2d at 868. HFactor has continuously failed to deliver the full breadth of discovery throughout this period which has led to two sanctions hearings. Furthermore, Turner served as the owner and sole chairman of HFactor and has not shown good cause for why he cannot access the company's financial records.

**b. Prejudice to Adversary**

Levy has had to file multiple complaints in response to newly uncovered information because the properly requested discovery was not provided to her. "An adversary may be prejudiced where the failure to prosecute results in the irretrievable loss of evidence...or

deprivation of information through non-cooperation with discovery." Parks v. Ingersoll-Rand Co., 380 F. App'x 190, 194 (3d Cir. 2010). It also appears possible that HFactor's non-compliance has allowed it to transfer assets to avoid paying any attorney's fees driven up by motion practice due to this discovery delay.

**c. History of Dilatoriness**

Defendants HFactor and Turner have shown a clear history of dilatoriness. "Extensive or repeated delay or delinquency" shows dilatoriness, such as "consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Adams v. Trs. of New Jersey Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 874 (3d Cir. 1994). HFactor and Turner have both failed to produce all the requisite records for discovery and consistently have failed to follow court orders. HFactor also did not pay and continues to not pay the $15,000 sanction in time. Turner's contention that he as owner did not have access to these records until a few days before the March 2026 hearing is unconvincing. PayPal activity after 2024 is also still missing despite evidence of these transactions occurring in the financial records supplied.

**d. Bad Faith**

The record also supports a finding that Defendants HFactor and Turner's conduct was in bad faith. The lack of reasonable explanation for the history of dilatoriness following the court ordered discovery and paying the court order sanctions evinces "intentional or self-serving behavior." Adams, 29 F.3d at 875. HFactor has provided no explanation for his tardiness in payment. Turner maintains that he did not have access to the records and was unaware of money flowing in and out of HFactor's accounts, despite his role as CEO. Turner has provided no clear explanation as to why he could not provide the records earlier with Defendant Lee's login credentials.

**e. Effectiveness of Other Sanctions**

There is no reason for the Court to believe Defendants HFactor and Turner's contention that keeping the claims open as to them and applying other sanctions would enable the Defendants to cure the defects in discovery and the monetary harm caused by their delay. The Court previously granted a motion to compel discovery, and the Defendants failed to produce the entire breadth of the relevant financial records. Subsequently, the courts sanctioned defendants for failing to produce all the requisite financial records and required payment of $15,000 to recompence Plaintiff's for attorney costs related to the failure to produce discovery. Defendants once again insufficiently complied leading the Court to issue an additional discovery order and hold a second sanctions hearing where discovery was once again found insufficient. The most recent statement provided by Defendants showed over $14,000 remaining in the Bank of America account and none of the PayPal activity is yet produced.

**f. Merits of the Claims**

Levy seeks a default judgement for all the counts alleged against Defendants HFactor and Turner. To evaluate the merits of the claim, the court looks at whether "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis, 747 F.2d at 870. The PWPCL claim against HFactor and Turner, the breach of contract claim against HFactor, and the conspiracy claims against HFactor and Turner are meritorious.

**Count 1 against HFactor and Turner:** To state a claim under PWPCL, "an employee 'must aver a contractual entitlement to compensation from wages and a failure to pay that compensation.'" Carlson v. Qualtek Wireless, LLC, No. 22-2569, 2023 WL 5094566, at *4 (3d Cir. Aug. 9, 2023) (quoting Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct.

2011)). Plaintiff has alleged that she was contractually entitled to compensation as the President of HFactor. TAC ¶¶ 34 – 35. Plaintiff alleges that she was owed $185,000 in unpaid wages and health insurance benefits. Id. ¶ 70. Thus, Levy has sufficiently alleged a meritorious claim against HFactor. Turner, on the other hand, was initially hired as outside counsel. Def. PFF ¶ 64. He was not yet an executive at the time of the original agreement and had no decision-making authority. Id. However, during the last three months of her most recent extended employment, Turner did serve as CEO and owner of HFactor. It is unclear if this amounts to a meritorious claim against Turner for individual liability.

**Count II against HFactor:** To sufficiently state a breach of contract claim, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015) (quoting Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (internal quotation marks omitted)). Levy's agreement to work for HFactor in exchange for an annual salary of $120,000 and benefits constitutes a legally binding contract. TAC ¶ 108. HFactor has failed to pay Levy her employee benefits and yearly salary based on this agreement. Id. ¶ 70-71. Levy has claimed these damages in her complaint. Id. ¶ 113. Thus, Levy has sufficiently alleged a meritorious claim here.

**Count III against Turner:** To state a tortious interference claim, a plaintiff must plead "(1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct." Store Rd., LLC v. N. Paone Constr.. Inc., 272 A.3d 448, **3 (Pa. Super. Ct. 2022). During the duration of the original

employment agreement until July 15, 2024, Turner was not yet an executive. TAC ¶ 113. Turner was not intimately involved in Levy's work situation during her transition from CEO to President of HFactor, which included her working remotely from her home in Pennsylvania, as this occurred before he became an executive. It is also unclear through what means Turner interfered with the contractual relationship as Levy's salary was already withheld by the time Turner came on board. Thus, this claim cannot be decided on the merits.

**Counts IV and V against Turner:** Under Georgia law, breach of fiduciary duty claims are to "be brought as a derivative suit when the injury is to the corporation and its shareholders. Southland Propane, Inc. v. McWhorter, 312 Ga. App. 812, 720 S.E.2d 270, 275 (2011). An exception to this is when there is "an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right *of a shareholder* which exists independently of any right of the corporation." Phoenix Airline Servs. v. Metro Airlines, 397 S.E.2d 699, 260 Ga. 584, 586 (1990) (emphasis added). This is not the case at hand because Levy is claiming an injury of lost wages and less management on the board. To the extent these damages are particular to her, they stem from her status as an employee, not as a shareholder. Therefore she does not have standing to bring a breach of fiduciary duty claim against Turner. For the same reasons, her aiding and abetting claim fails. Thus, neither claim sounding in fiduciary duty is meritorious.

**Count VI against HFactor and Turner:** Under Pennsylvania law, conspiracy requires the plaintiff to allege that (1) at least two individuals act with the sole, common purpose of committing an unlawful act, (2) an overt act in furtherance of this agreement, and (3) some sort of actual legal damage to the plaintiff. Zafarana v. Pfizer, Inc., 724 F. Supp. 2d 545, 559 (E.D. Pa. 2010). Claims for civil conspiracy "must be based on an independent underlying civil cause of

action" and "the plaintiff must show it was the object of a conspiracy." NRA Grp., LLC v. Durenleau, 154 F.4th 153, 172 (3d Cir. 2025), cert. denied, 146 S. Ct. 1856 (2026) (citation omitted). Here, the unlawful civil act was the violation of the PWPCL. Turner knew of or at least could be highly certain that ERC credit deposits were being made into HFactor's accounts and continually denied paying Levy's outstanding wages. Turner also participated in the transfer of intellectual property away from HFactor to Standard Beverage, Inc. See Kyko Glob., Inc., No. 2:18-CV-01290-WSS, 2020 WL 1159439, *33 (finding that plaintiff satisfied the knowledge prong for the defendant co-conspirators by showing that they had received the benefit of fraudulent actions). Thereby, both Turner and HFactor can be liable for conspiracy.

In sum, five of the six Poulis factors weigh in favor of default judgement against HFactor and all of the claims against HFactor can be decided on the merits. However, the record does not conclusively show that Turner was dilatory in discovery production *specifically* relating to claims against him as an individual, and Counts III, IV, and V cannot be decided on the merits in regard to Turner.

## V. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Default on Count I (PWPCL), Count II (breach of contract), and Count VI (conspiracy) against Defendant HFactor given Defendant HFactor's clear and continued failure to produce discovery or comply with court orders. The Court will postpone a ruling on the monetary amount owed and the breadth of sanctions to a later time. The Court will **DENY** Default on the claims against Turner individually, but **GRANT** the Motion for Sanctions as to Turner. The Court will also reserve ruling on the appropriate sanctions until after the case proceeds to trial or otherwise resolves.